S. STERN, HENRY & CO.

v.

UNITED STATES.

C.D. 3951; Protest 64/3604–4785–62.

United States Customs Court,
Second Division.

Jan. 13, 1970.

Allerton deC. Tompkins, New York City, for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Bernard J. Babb, New York City, trial attorney), for defendant.

Before RAO and FORD, Judges, and WILSON, Senior Judge.

WILSON, Judge:

This protest concerns five entries * of gloves and mittens which are more particularly described *infra*. They were exported from Japan, except for the merchandise in entry Nos. 894036 and 987975 which was exported from Hong Kong. The entries were made at the port of New York between March 31, 1960 and March 31, 1961. The plaintiff is a customhouse broker. Elliot Knitwear Corp. of New York City, hereinafter referred to as Elliot, was the actual importer.

These gloves and mittens were classified under either paragraph 1309, 1532 or 1114 of the Tariff Act of 1930 as modified as noted below, at specific and/or ad valorem rates. They are claimed to be *samples* used only for soliciting orders for products of foreign countries and free of duty under paragraph 1821(a) and (b) of the Tariff Act of 1930, as amended. The competing paragraphs are recited *infra*.

The merchandise was either appraised as entered or advanced in value by the appraiser, but in neither event was an

---

* A sixth entry No. 929886, was also included, but was abandoned. (R.5 and plaintiff's brief page 3.)

appeal for reappraisement filed. The official entry papers were received in evidence without being marked as exhibits.

The protest was abandoned by plaintiff (brief page 3) insofar as it relates to merchandise *not* identified in the schedule below.

SCHEDULE

| Entry number | Invoice of case numbers; merchandise claimed FREE | Agreed assessed paragraph | Agreed rate assessed | Invoiced and entered values at less than $1 per pair |
|---|---|---|---|---|
| 987975 | 38466, 38468 | 1309 | 32½% + 25¢ lb. | R. 11 |
| 987975 | 38469 | 1309 | " " " " | R. 7 |
| 987975 | 38472 through 38475 | 1309 R. 9, 10 | " " " " R. 9, 10 | R. 11 |
| 937682 | 52215 | 1532 R. 11 | 15% R. 11 | R. 12 |
| 971398 | 55141, 55142 | 1309 | 32½% + 25¢ lb. | R. 12 |
| 971398 | 55144, 55145 | 1309 R. 12, 13 | " " " " R. 12, 13 | R. 12 |
| 929044 | Entire | 1532 | 15% | R. 16 |
| 929044 | shipment | 1532 R. 17 | 15% R. 17 | R. 16 |
| 894036 | 85202 | 1309 | 32½% + 25¢ lb. | R. 18, 19 |
| 894036 | through 85224 except 85211 | 1309 R. 19 | " " " " R. 19 | R. 18, 19 |
| 894036 | 85211 | 1114 R. 19 | * | R. 19 |

The merchandise as shown by the document "Shipment Record," part of the entry papers, as to case number 85211 reads "100% Wool men's Jacquards." The red ink notations by customs officials thereon indicate "1114" and "Gloves, wool." However, no rate is disclosed by customs officials for that merchandise. Above those notations for cases 85202 to 85210, and below those notations for cases 85212 to 85224, the merchandise is shown as "55% Nylon/45% Wool" which are shown in red ink to be assessed under paragraph 1309 at 32½ percent ad valorem and 25 cents per pound as "Gloves, Knit, in C. V. of other synthetic textile."

* Defendant concedes paragraph 1114 is the paragraph of assessment but does not concede the rate because the merchandise in case 85211 is stated to be *wool* in the invoice, and could not be classified under paragraph 1309 which applies to synthetic textile materials (R.20). That case 85211 is shown in the entry without change of rate by the collector. (R.19.)

## THE STATUTES

Paragraph 1309 of the Tariff Act of 1930, as modified by T.D. 51802:

Gloves and mittens, knit or crocheted, finished or un-
finished, wholly or in chief value of rayon or other
synthetic textile:

\*    \*    \*    \*    \*    \*    \*    \*

Valued at $1.50 or more per dozen pairs ........27½¢ per lb.
and 32½%
ad val.

Paragraph 1309 of the Tariff Act of 1930, as further modified by
T.D. 52739:

Outerwear, and articles of all kinds, knit or crocheted,
finished or unfinished, wholly or in chief value of
rayon or other synthetic textile (not including knit
fabric in the piece, gloves, mittens, hose, half-hose, 25¢ per lb.
or underwear; and except hats, bonnets, caps, ber- and 32½%
ets, and similar articles ........................ ad val.

NOTE: The specific part of the rate of duty applica-
ble to any product provided for in paragraph 1309,
Tariff Act of 1930, but not described in this item,
shall be ...................................25¢ per lb.

The provisions of this note shall not impose any
obligation with respect to the ad valorem part of the
rate applicable to gloves and mittens.

Paragraph 1559(a) of the Tariff Act of 1930, as amended by the
Customs Simplification Act of 1954, T.D. 53582:

(a) Each and every imported article, not enumer-
ated in this Act, which is similar in the use to which
it may be applied to any article enumerated in this
Act as chargeable with duty, shall be subject to the
same rate of duty as the enumerated article which
it most resembles in the particular before men-
tioned; and if any nonenumerated article equally
resembles in that particular two or more enumera-
ted articles on which different rates of duty are
chargeable, it shall be subject to the rate of duty
applicable to that one of such two or more articles
which it most resembles in respect of the materials
of which it is composed.

Paragraph 1532(b), Tariff Act of 1930, as modified by T.D. 51802:

Gloves wholly or in chief value of leather made
from horsehides or cowhides (except calfskins),
whether partly or wholly manufactured ......15% ad val.

Par. 1114. (a) \* \* \*. [Tariff Act of 1930]

(b) Hose, half-hose, gloves, and mittens, finished
or unfinished, wholly or in chief value of wool,
\* \* \* [rates are ad valorem and specific, but
different from paragraphs 1309 and 1532].

Paragraph 1821(a) and (b) Tariff Act of 1930, as amended (free list) [Public Law 85-211, 71 Stat. 486, approved August 28, 1957, 92 Treas.Dec. 281, T.D. 54463]:

(a) Except as provided in subparagraphs (b), (c), and (d), any sample to be used in the United States only for soliciting orders for products of foreign countries.

(b) Subparagraph (a) shall apply to a sample only if its value does not exceed $1, except that this limitation shall not apply to (1) any sample which is marked, torn, perforated or otherwise treated, in such a manner that such sample is unsuitable for sale or for use otherwise than as a sample, * * *.

The plaintiff contends that the imported merchandise consists of sets of gloves, woven, and with vinyl palms or all vinyl; that the gloves as imported are attached together in sets of four; that the classification and assessment are not challenged if the gloves are not treated as samples; that they were given away to charitable and religious organizations or destroyed, and are used for soliciting orders as samples. (R.2, 3.)

The defendant contends that the plaintiff has not met the requirements of paragraph 1821(a) *supra* (R.8) and is not entitled to free entry as samples. (Defendant's brief page 8.)

The plaintiff called Herman Gross who testified that he was president of Elliot from 1948 to 1961 and then also became and still was chairman of the board to the date of trial on June 14, 1968; that he has been and still is active; that in 1960 and 1961 he had complete managerial duties including travelling to the Orient where this merchandise was purchased, and setting up all details, and selling; that Elliot principally imports gloves and other apparel from the Orient for distribution through the United States to chain stores, etc., that he placed orders for the purchase of all of the merchandise in all of these entries and saw the merchandise upon im-

portation and had charge of it thereafter; that he reviewed each invoice in the protest prior to the hearing; that he claims free of duty for certain items under paragraph 1821 as amended, with which paragraph he is intimately familiar, as well as with the subsequent TSUS paragraphs.

Mr. Gross testified with respect to the merchandise in specific cases in particular entries, all of which is claimed free of duty.

■ The defendant offered neither oral testimony nor documentary exhibits. The testimony of Mr. Gross, a single competent and credible witness with experience in purchasing and selling articles such as or similar to that herein involved, whose testimony is uncontradicted and unimpeached, is sufficient to overcome the presumption of correctness of the collector's classification. In the case of United States v. Gardel Industries, 33 CCPA 118, 122, C.A.D. 325 (1946), the court stated in deciding the question of chief use that "the uncontradicted and unimpeached testimony of a single competent and credible witness may be sufficient to overcome the presumption in support of the collector's assessment and establish a *prima facie* case in favor of the protestant" and cited Catton, Neill & Co. (Ltd) v. United States, 11 Ct.Cust.Appls. 278, T.D. 39084 (1922); United States v. Wanamaker, 14 Ct.Cust.Appls. 285, T.D. 41888 (1926).

The record clearly discloses that Elliot imported the gloves and mittens as samples "to be used in the United States only for soliciting orders for products of foreign countries" (par. 1821(a) *supra*), and that the value of the samples, exhibits 1, 2, 3 and 4, does not exceed $1 per pair (par. 1821(b) *supra*); that they were presented as gifts to charitable and religious institutions and hospitals after use by salesmen in soliciting orders, and were soiled and shopworn and not salable, because they were not in commercial assortment, and were medium sizes only, rather than small, medium and

large sizes, and must be cut apart as they come in sets of four gloves or mittens as shown by exhibits 1, 2, 3 and 4, to each sample as imported, and are not ready for sale in that condition, while in commercial assortments, each pair, left hand and right hand, are attached to each other, but separate from other pairs, and are ready for sale.

■ The presumption of correctness attaching to the collector's classification may be overcome by the probative effect of the samples themselves. United States v. Bruce Duncan Co., Inc., a/c Kasuga Sales, Ltd., National Silver Company, 50 CCPA 43, C.A.D. 817 (1963). "In determining such [chief] use it is proper to consider not only the testimony offered, but the characteristics of the merchandise itself." United States v. Colibri Lighters (U.S.A.) Inc., 47 CCPA 106, C.A.D. 739 (1960). "A sample * * * is a very potent witness." United States v. The Halle Bros. Co., 20 CCPA 219, T.D. 45995 (1932); Ignaz Strauss & Company, Inc. v. United States, United States v. Ignaz Strauss & Company, Inc., 54 CCPA 125, C.A.D. 923 (1967). An ocular examination of the samples, exhibits 1, 2, 3 and 4 in the case at bar discloses no reason to doubt the testimony of Mr. Gross with reference thereto.

■ Defendant's brief page 6 refers to the statutory language in paragraph 1821(a), "used in the United States only for soliciting orders" which has been *administratively interpreted*, 93 Treas. Dec. 126, 127, T.D. 54569 (1958), to mean that articles so entered as samples, must not be used for any other purpose or be sold or given away within the United States, and after serving their use as samples, they must be retained, reexported or destroyed by or on behalf of the person or firm who received them from abroad. The defendant recognizes that *administrative rulings are not binding upon this court*, citing Washington Handle Co. v. United States, 34 CCPA 80, C.A.D. 346 (1946), but states that such rulings have frequently been con-

sidered by the court as an aid to interpreting statutory language, citing Semon Bache & Co. v. United States, 17 CCPA 273, T.D. 43690 (1929). It is further asserted, brief pages 6, 7, that the above quoted statutory language has been reenacted unchanged as part of item 860.30 of the Tariff Schedules of the United States which gives rise to an implied ratification by Congress of the administrative interpretation in T.D. 54569.

In the *Washington Handle Co.* case, *supra*, the court stated, 34 CCPA at page 85:

"Long-continued administrative practice in the construction of tariff terms, when followed by subsequent legislation making no change in such terms, is a very persuasive and often a controlling factor. Administrative practice without subsequent legislation, although a matter of consideration for the courts in close cases, is seldom a controlling consideration. P. Silverman & Son v. United States, 32 C.C.P.A. (Customs) 99, C.A.D. 292."

In the *Semon Bache & Co.* case, *supra*, the court stated that the testimony relating to *administrative practice* was not very comprehensive but appeared to establish that certain examiners at the ports of New York and Philadelphia only, under at least 1909, 1913, and 1922 Tariff Acts passed certain glass as appellant there contended. The court stated, 17 CCPA at page 275:

" * * * We should not feel justified in holding that this rather meager testimony of the witnesses (four of them Government examiners called by appellant) alone suffices to establish a line of continuous, general administrative practice which should be controlling, but it is proper, we think, to be considered in connection with other facts."

In the case at bar there is no evidence as to establish a line of continuous practice, and moreover, in the *Semon Bache* case, *supra*, the court also considered testimony relative to commercial designa-

tion, judicial decisions and legislative history, none of which are present in the case at bar.

In *Rolland Freres, Inc. v. United States*, 23 CCPA 81, 90, T.D. 47763 (1935), the court stated that "The rulings of the Treasury Department, prior to the passage of the Tariff Act of 1922 * * * we think constitute no proper basis for the application of the doctrine of legislative adoption of *administrative practice*." [Emphasis supplied.]

In *Bloomingdale Bros. v. United States, etc.*, 3 Ct.Cust.Appls. 204, T.D. 32530 (1912), the court stated at page 205:

"* * * Departmental practices and usages, however uniform and long continued they may be, are nothing more than aids to the court in construing a law of doubtful import, and in no case can they be invoked to defeat the legislative will expressed in clear, unambiguous, and unequivocal terms. * * *"

■ While the defendant's arguments regarding paragraph 1821(a) may seem to be persuasive, they actually have little, if any, merit. An interpretative ruling by customs of a particular statutory provision and a subsequent reenactment of that statutory provision by Congress in the same language, is *not* the equivalent of legislative sanction of judicial interpretation. Where a court of competent jurisdiction interprets by construction a particular statutory provision, and such decision is called to the attention of Congress, a subsequent reenactment of that statutory provision by Congress without change is considered legislative approval of judicial interpretation and ratification of judicial construction in the absence of very compelling contrary reason. *August Bentkamp v. United States*, 40 CCPA 70, C.A.D. 500 (1952); *Werner G. Smith Co., Div. Archer Daniels Midland Co. v. United States*, 40 CCPA 90, C.A.D. 503, (1952); *United States v. The Water Treatment Co. of America, Etc.*, 33 CCPA 174, C.A.D. 332 (1946); *United States v. E.*

*Dillingham, Inc.*, 41 CCPA 221, C.A.D. 555 (1954); *United States v. Astra Trading Corp.*, 44 CCPA 8, C.A.D. 627, (1956); *United States v. Curley-Bates Co.*, 46 CCPA 14, C.A.D. 688 (1958).

This court considered the legislative history of Public Law 85–211, *supra*, in reference to *wallpaper sample books* claimed free of duty under paragraph 1821(a) *supra*. The sample books were specially prepared for the actual importer at a cost of $4.80 per copy, the charge being made by reason of the expense of manufacturing these books. The court stated:

"After importation, a collection of Italian wallpaper samples was assembled with the French papers, and the books were distributed, unsolicited, to decorators throughout the United States, for the purpose of obtaining orders for the French and Italian wallpapers exhibited. Pursuant to customary procedure for such distribution in this trade, payment, or in lieu thereof, return of the book, is requested. Some, but not many of the recipients, remit payment; some return the books; others simply retain them without payment.

"When the papers have exhausted their potential for current selection of wallpaper designs, those books that are returned are destroyed." *Carson M. Simon & Co. v. United States*, 46 Cust. Ct. 118, 120, C.D. 2243, (1961).

The above case was cited with approval by the court in *Italian Drugs Importing Co., Inc. v. United States*, 46 Cust.Ct. 243, 248, 249, C.D. 2263 (1961), which involved a *vitamin known as Ino B–Omnia* imported for the purpose of soliciting orders and creating a demand therefor, which was to be manufactured and supplied by an Italian firm and shipped without charge to plaintiff, its sole United States agent. The plaintiff claimed the vitamins to be free of duty under paragraph 1821, Public Law 85–211 as a "sample." That provision, as well as the administrative ruling 93 Treas.Dec. 126, 127, T.D. 54569, *supra*,

was considered as was a similar customs ruling to the same effect in 95 Treas. Dec. 88, T.D. 55061(1) (1960). The samples of Ino B–Omnia are distributed to physicians who, in turn, distribute them to patients. The court stated, 46 Cust.Ct. at page 249:

" * * * If the contents of these sample vitamins prove satisfactory or effective, there is thus created a demand for the vitamins, so that druggists and drug houses will order and stock them. Under such circumstances, it must be held, in our opinion, that these vitamin samples are employed and used for one purpose and one purpose only, namely, for the purpose of soliciting orders. Certainly, the samples, in and of themselves, even though possibly temporarily beneficial, would prove of no lasting salutary value to the patient. The end result therefore, predicated on future orders for these samples, is the production and sale of merchandise by the foreign manufacturer, a purpose within the intent of the enactment of Public Law No. 85–211, *supra*, namely, the promotion of international trade."

The court further stated that the sample vitamins, by their very nature, could not merely be used for show purposes, but had to be consumed in order to determine whether or not they were of such worth or character as to warrant their purchase, and the only way a physician could test their effectiveness would be to dispense them to patients, in that case, free of charge. In such situation, the court stated:

" * * * the physician would be in a comparable position to that of the seller of the wallpaper books in the *Simon & Co.* case, *supra*. If the vitamins in question were found efficacious after distribution by the physician, the result would be that orders would be placed for their purchase, a circumstance bringing these vitamin samples within the applicable provisions of Public Law No. 85–211."

Plaintiff's claim for free entry was sustained.

To the same effect see Swissedent International, Hoyt, Shepston & Sciaroni v. United States, 47 Cust.Ct. 174, C.D. 2298 (1961), involving artificial teeth described as *"Candulor CR Shade Guides"* claimed and held free of duty under paragraph 1821, Public Law 85–211 as samples imported to be used in the United States only for soliciting orders for products of foreign countries.

The defendant, brief page 8, asserts that the case of United States v. London Records, Inc., 56 CCPA ——, C.A.D. 945 (1968), "has no bearing on the issue at bar." This court does *not* agree. The undisputed factual situation in that case indicated that the merchandise imported from England consisted of phonograph records which were claimed to be duty free under 860.30 of the Tariff Schedules of the United States, the provisions being substantially the same as the statutory language embodied in paragraph 1821(a) and (b) as amended by Public Law 85–211.

Plaintiff's president and former executive vice-president, who evinced his familiarity with the company's products, policies and practices, testified that the business of the importer-plaintiff below, was to sell both foreign and domestically produced records; that the records are contained in albums and have several selections on each side; that the white label thereon bears the words "Made in England—Not For Sale," and the letters "DJ" are inscribed next to the record number; that they are kept separate from the consumer or commercial records, the latter being identified by a red and silver label with only an LL number appearing thereon; that the white label records are suitable for playing in their imported condition; that upon importation from England, the records are sent to their distributors, to record reviewers, and to commercial and college radio stations throughout the United States, without charge, the purpose being to achieve public exposure to create or stimulate a demand therefor; that the radio stations are urged to, and disc jockeys frequently do, mention the title composition and the name of the artist,

and reviewers write comments relating to the compositions which are published, having the effect of enlisting the attention of prospective purchasers and enabling identification at retail outlets.

The national promotion manager for album products of London Records, Inc., testified that at the time of importation, he was personally responsible for, and in charge of the distribution of the sample or white label records, which are distributed to reviewers and radio stations across the country, and that he determines the quantity that will go to various areas, and that they are then sent to the promotional personnel of their distributors who in turn distribute them to radio stations in their respective areas; that he prepares a list of distribution and he also actually visited various radio stations and disc jockeys throughout the United States, and urged them to play the records given to them free of charge, and that the promotional merchandise is not distributed to record stores.

The appellate court stated that the Customs Court, in holding that the imported records represent sample merchandise within the purview of item 860.30, *and as such free of duty*, observed that the issue of duty-free status of sample merchandise had been dealt in under substantially the same statutory language embodied in paragraph 1821 (a) and (b) as amended by Public Law No. 85–211, and cited the cases of Carson M. Simon & Co.; Italian Drugs Importing Co., and Swissedent International *et al., supra.*

The appellate court also stated:

"In essence, the United States advances the same argument here upon which it relied below, the gist being that the samples have not been shown to have been used for solicitation purposes *only*. In substance it is asserted that the samples were used by radio stations and disc jockeys in promotion of their commercial purposes and interests and not, in the language of the statute 'only for soliciting orders for products of foreign countries.'"

The court also stated that the controlling factor appears to be not what the radio station or disc jockey does, but, rather, whether the importer uses the samples "only for soliciting orders," and said, "We view their role, as did the court below, 'as incidental and wholly subordinate to what plainly appears as the sole *motivating* [emphasis copies] purposes behind the importation and distribution of the samples—creation of demand for future orders.'"

In effect, the appellate court adhered to the conclusions reached by the Customs Court in the aforesaid three last cases cited herein.

While there is a difference in the imported samples of wallpaper, vitamins, artificial teeth and phonograph records, resulting in different uses and/or dispositions, there is no legal distinction to be drawn therefrom as the last above quotation equally applies to all such samples, and it also applies with respect to the herein involved gloves and mittens.

This court is of the view that the sole motivating purpose behind the importation and disposal of the sample gloves and mittens free of charge to charitable and religious institutions and hospitals, was the creation of demand for future orders. Notwithstanding the language of the statute that samples should be imported "only for soliciting orders for products of foreign countries", there is no statutory prohibition against the dispositions made of the samples in the cited cases nor the gloves and mittens in the case at bar.

On the entire record herein, and the law as stated *supra*, we conclude that plaintiff has established a *prima facie* case warranting the conclusion that the imported gloves and mittens, identified in the schedule *supra* are samples within contemplation of paragraph 1821(a) and (b) of the Tariff Act of 1930, as amended by Public Law 85–211, 71 Stat. 486, and are entitled to free entry. As to all other merchandise which has been abandoned, the protest is dismissed.

Judgment will be entered accordingly.