**INNOTECH AVIATION LTD., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. Slip Op. 97–175.
Court No. 92–04–00244.

United States Court of
International Trade.

Dec. 18, 1997.

412

Stafford, Trombley, Purcell, Lahtinen, Owens & Curtin, P.C. (William L. Owens), for plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Barbara M. Epstein), for defendant.

## OPINION

MUSGRAVE, Senior Judge.

This action is before the Court on cross motions for summary judgment pursuant to CIT R. 56. Plaintiff, Innotech Aviation, Ltd. ("Innotech"), contests the denial by the United States Customs Service ("Customs") of a protest seeking duty-free entry of a civil aircraft engine.

### Background

The dispute in this case concerns the duty rate applicable to an aircraft engine imported by Innotech. The aircraft engine was entered on January 10, 1990, and remained in the U.S. for sixty days as a replacement engine for an aircraft whose original engine was undergoing repairs. Innotech filed entry documents claiming duty-free entry for the replacement engine pursuant to the Agreement on Trade in Civil Aircraft ("ATCA"). Along with the entry documents, Customs' regulations require an importer to file a certification attesting to the eligibility

of its merchandise for duty-free treatment under the ATCA, or to have on file with Customs an approved "blanket" certification, covering all qualifying merchandise for up to one year, to the same effect. Innotech did not file an entry-by-entry certification with the entry documents for its engine, but did submit a blanket certification request to Customs before the entry of its aircraft engine. Customs alleged that it did not have Innotech's blanket certification on file at the time of entry of the aircraft engine, however, and entered the engine under the claimed classification but without the additional "C" prefix denoting duty-free entry, instead charging a 5% duty rate on the engine.

Innotech protested on March 19, 1991, asserting that it had submitted a blanket certification request to Customs on November 9, 1989, two months before the aircraft engine was entered. Innotech's protest included a copy of the blanket certification request and a description of the chain of events linking the blanket certification request's movements from Innotech to its customs' broker, F.W. Myers, and finally to Customs. Customs argued that it had no record of receiving the certification request, and stated, in denying the protest, that Innotech's failure to have a blanket ATCA certification on file or presented at the time of the entry of the aircraft engine precluded Innotech from the privilege of duty-free entry. Innotech asserts that Customs did have the certification at the time of entry, but Customs contends that the certification itself is legally insufficient to qualify for ATCA treatment and thus could not have been approved at the time of entry. Innotech asserts that the certification was legally sufficient, and that Customs should have accepted its claimed entry classification. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a), and finds that Innotech's ATCA certification is legally sufficient and that the Customs service erred in refusing Innotech duty-free classification for its engine.

### Standard of Review

 Decisions of the Customs Service are presumed to be correct, 28 U.S.C. § 2639(a)(1) (1994), but the presumption of correctness applies solely to factual questions and it is the duty of this Court to find the correct result.[1] The classification decision entails a three-step process including a factual and a legal inquiry, and an ultimate mixed question involving both factual and legal components. The factual inquiry is subject to the "clearly erroneous" standard while the purely legal and ultimate mixed questions are reviewed *de novo. Bausch & Lomb, Inc. v. United States,* 21 CIT ——, ——, 957 F.Supp. 281, 284 (1997).

 Both parties have moved for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact … and the moving party is entitled to judgment as a matter of law." CIT R. 56(d); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The party opposing summary judgment may not rest on its pleadings, but must respond with specific facts showing the existence of a genuine issue for trial." *Pfaff American Sales Corp. v. United States,* 16 CIT 1073, 1075 (1992) (citations omitted).

The Court of Appeals for the Federal Circuit considers the use of summary judgment to be an efficient mechanism for the resolution of disputes.

> The recent trilogy of Supreme Court cases establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' "

---

1. *See Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984) ("the court's duty is to find the correct result, by whatever procedure is best suited to the case at hand"), *Goodman Mfg., L.P. v. United States,* 13 Fed. Cir. (T) ——, ——, 69 F.3d 505, 508 (1995) (the statutory presumption of correctness attaches only to an agency's factual determinations), *and*

*Rollerblade, Inc. v. United States,* 15 Fed. Cir. (T) ——, 112 F.3d 481 (1997) (legal issues are not afforded deference under 28 U.S.C. § 2639 .or under the administrative deference standard set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557 (Fed.Cir.1988) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)). The Court finds that no genuine issue as to any material fact exists in this case.

### Discussion

This case presents the Court with one issue: whether the ATCA certification that Innotech submitted to Customs is legally sufficient to qualify for ATCA duty-free treatment. On this purely legal question, the Court finds that Innotech's ATCA certification is legally sufficient and that Customs erred in not granting Innotech's duty-free classification for its aircraft engine.

■ As a preliminary matter, Customs states in its briefs that it never received Innotech's blanket certification request and thus could not grant Innotech's duty-free classification. Customs argues that its regulations bar an importer's goods from duty-free treatment under the ATCA where the importer fails to file an ATCA certification either prior to or simultaneous with the entry of ATCA-eligible goods. Customs' regulation reads:

> At the time of filing the entry summary, the importer of civil aircraft parts shall submit a certificate in substantially the form described in . . . this section. As an alternative, an importer . . . may submit a blanket certification . . . . The certification may not be treated as a missing document for which a bond may be posted. Failure to provide the certification at the time of filing the entry summary or to have an approved blanket certification on file with the district director where the entry summary is filed shall result in a dutiable entry.

19 C.F.R. § 10.183(c)(2) (1991). Customs argues that Innotech did not file nor have on file an ATCA certification at the time of entry of its aircraft engine and thus, based on the above regulation, must deny Innotech's duty-free entry classification.

Customs' position does not withstand scrutiny. The affidavit of Innotech's counsel, William L. Owens, states that Customs in-

formed Innotech that its certification had been received but not yet approved. Owens Aff. ¶ 11. The affidavit of Innotech's customs broker, Steven P. Weiss, and Innotech's answers to Customs' interrogatories, support this statement and clearly establish that Customs did have Innotech's certification at the time of entry of the aircraft engine. *See* Weiss Aff. ¶¶ 4–7 *and* Def.'s Br. Supp. Def.'s Mot. Summ. J. at Ex. 2. Customs has not provided the Court with any information to contradict the statements of Innotech and its agents, nor established any reason to believe that the blanket certification was not in Customs' possession at the time of entry of the aircraft engine that is the subject of this dispute. The statement of Innotech's customs broker sets forth uncontested facts demonstrating that Customs had Innotech's ATCA certification well before the entry of its aircraft engine. To quote this Court's predecessor, the Customs Court: "The testimony of [Mr. Weiss], a single competent and credible witness with experience in [the Customs' issues] herein involved, whose testimony is uncontradicted and unimpeached, is sufficient to overcome the presumption of correctness of [Customs'] classification." *S. Stern, Henry & Co. v. United States,* 64 Cust. Ct. 1, 5, 64 Cust.Ct. 1, 308 F.Supp. 712, 716, C.D. 3951 (1970) (citing *United States v. Gardel Industries,* 33 C.C.P.A. 118, 122, C.A. 325 (1946)). Thus, the Court dismisses Customs' argument that it did not have Innotech's ATCA certification at the time of entry.

Further, even if Customs did not have Innotech's certification at the time of entry, Customs could not bar Innotech from remedying that problem. Customs maintains that the language of Customs Regulation 10.183(c)(2) absolutely precludes an importer from receiving duty-free treatment for its goods if the importer fails to file or have on file the ATCA certification at the time of entry of its goods. Specifically, Customs relies on the final sentence of the regulation to establish this bar: "Failure to provide the certification at the time of filing the entry summary or to have an approved blanket certification on file with the district director where the entry summary is filed shall result

in a dutiable entry." 19 C.F.R. § 10.183(c)(2) (1991).

■ This Court has previously encountered the cited language of this Customs regulation and, because that language had been promulgated in violation of the Administrative Procedure Act, declared it invalid. *Gulfstream Aerospace Corp. v. United States,* 21 CIT ——, 981 F.Supp. 654 (CIT 1997) (*"Gulfstream"*); *Aviall of Texas, Inc. v. United States,* 18 CIT 727, 861 F.Supp. 100 (1994) (*"Aviall"*), *aff'd, Aviall of Texas, Inc. v. United States,* 14 Fed. Cir. (T) ——, 70 F.3d 1248 (1995). This Court has found that while the first part of Customs Regulation 10.183(c)(2) is valid and requires the ATCA certification to be presented at time of entry, failure to do so will not automatically preclude an importer from receiving the privilege of ATCA duty-free treatment. *Gulfstream,* 981 F.Supp. at 665–66. An importer can receive ATCA duty-free treatment by establishing that its failure to file an ATCA certification at the time of entry was due to a mistake of fact, clerical error or other inadvertence under 19 U.S.C. § 1520(c)(1), or by meeting the criteria for late filing of duty-free entry documentation under 19 C.F.R. § 10.112. *Id.* at 665–69; *Aviall,* 18 CIT at 732–35, 861 F.Supp. at 105–07. Although even a cursory examination of Innotech's situation reveals that it would be eligible for relief under both provisions, the Court does not reach the question of whether Innotech qualifies for that relief. The Court finds that, based on the Innotech affidavits and interrogatory responses, the requirement in 19 C.F.R. § 10.183(c)(2) that the importer submit the ATCA certification at the time of entry has been satisfied.

This brings the issue of this case into greater clarity. The issue is not whether Customs had possession of Innotech's ATCA certification at time of entry, but whether Customs had a *legally sufficient* ATCA certification at time of entry. Customs' denial of Innotech's protest solely on the basis of not having possession of Innotech's ATCA certification was wrongful. Customs now argues

that the ATCA certification submitted by Innotech does not comply with the requirements for a valid and legally sufficient ATCA certification, and therefore could not grant Innotech's duty-free classification. This argument is also without merit. The Court finds that the certification is sufficient and should have been approved, and the aircraft engine must be classified and entered duty-free.

■ For an ATCA certification to be valid, it must comply with the requirements set forth in General Note 3(c)(iv), Harmonized Tariff Schedule of the United States ("HTSUS") (19 U.S.C. § 1202 (1988)). This provision states:

> *Articles Eligible for Duty–Free Treatment Pursuant to the Agreement on Trade in Civil Aircraft.* Whenever a product is entered under a provision for which the rate of duty "Free (C)" appears in the "Special" subcolumn, the importer shall file a written statement, accompanied by such supporting documentation as the Secretary of the Treasury may require, with the appropriate customs officer stating that the imported article has been imported for use in civil aircraft, that it will be so used and that the article has been approved for such use by the Administrator of the Federal Aviation Authority (FAA) or by the airworthiness authority in the country of exportation, if such approval is recognized by the FAA as an acceptable substitute for FAA certification, or that an application for approval for such use has been submitted to, and accepted by, the Administrator of the FAA. For purposes of the tariff schedule, the term *"civil aircraft"* means all aircraft other than aircraft purchased for use by the Department of Defense or the United States Coast Guard.

General Note 3(c)(iv), HTSUS (1991).[2] The certification must also comply with Customs Regulation 10.183, which was promulgated to implement General Note 3(c)(iv). The regulation sets forth the "written statement" required by General Note 3(c)(iv) in the form of an ATCA certification to support the claim

---

**2.** The current version of this provision, unamended, is found at General Note 6, HTSUS (1996).

for duty-free entry. The certification is described in the regulation as follows:

*Blanket certification.* The certification may be in the form of a blanket certification which shall be valid for a period of one year from the date of approval by the district director in the district where the civil aircraft parts will be entered. The blanket certification may be renewed for additional one-year periods upon written request to each concerned district director. If a blanket certification is used it shall be in substantially the following form.

BLANKET CERTIFICATION FOR CIVIL AIRCRAFT PARTS

I, ————————

Importer's name, address, IRS number

certify that the use by me or my authorized agent on an entry summary, or other entry documentation, of a HTSUS subheading number for civil aircraft parts, the subheading number description of which requires certification for use in civil aircraft, means that the articles identified on the entry summary or entry documentation are imported for use in civil aircraft within the meaning of Chapter 88, HTSUS, and section 10.183, Customs Regulations (19 CFR [*sic*] 10.183), that the articles will be so used and that the articles have been approved for such use by the Administrator of the Federal Aviation Administration (FAA) or by the airworthiness authority in the country of exportation, if such approval is recognized by the FAA as an acceptable substitute for FAA certification, or that an application for approval for such use has been submitted to, and accepted by, the Administrator of the FAA.

I agree (1) that documentation will be maintained to support the above certification, and (2) to inform the district director of any change which would affect the validity of this certification.

I understand that this certification will be valid for a period of one year from the date of approval by the district director and will cover entries made only in the district where filed.

Signature ———————

Title ————————

19 C.F.R. § 10.183(d)(2) (1991). Based on General Note 3(c)(iv) and this regulation, there are three elements that comprise a valid ATCA certification: (1) that the imported article has been imported for use in civil aircraft; (2) that it will be so used and that the importer will notify Customs of any diversion of the article to non-approved use; and (3) that the article has been approved or certified, or submitted for approval, for use in civil aircraft by the Federal Aviation Authority ("FAA") or by the airworthiness authority in the country of exportation if deemed an acceptable FAA substitute. Customs contends that Innotech's certification omits the third element. Specifically, Customs argues that Innotech's certification did not state that its aircraft engine had FAA approval, and that in the absence of this statement, the certification is invalid.

■ Innotech argues that its certification is valid because, as required by Customs' own regulation, it is in "substantially" the form set forth by Customs and plainly states that all goods to be entered under the blanket certification are certified for use in civil aircraft. The certification which Innotech submitted is on company letterhead, includes the full address of the company and the name and title of the declarant, and reads:

CIVIL AIRCRAFT AGREEMENT BLANKET DECLARATION

I, Peggy Hayes, declare that my assignment of a TSUS item description which contains the description "certified for use in civil aircraft", [*sic*] as defined in Section 601 of P.L. 96–39 means that the importer and/or manufacturer and/or end user of the imported article intends to use such imported article in civil aircraft in accordance with the provisions set forth in Section 601(A). I further declare such documentation as is required by generally accepted accounting procedures that can produce an audit trail supporting entry statements will be maintained and that any diversion from the intended use will be maintained and that any diversion from the intended use will be reported. As appropriate, [*sic*] and any duties due as a result of the diversion will be tendered concurrently.

This declaration covers all entries made by Innotech Aviation Limited, Montreal International Airport, Dorval Quebec H4Y 1A6 or their authorized agent and precludes the necessity of a required statement on each entry summary.

I agree to inform the Customs officials with whom this declaration is filed of any change that affect [*sic* ] the truth of this declaration.

[The signature, title and date follow.]

Def.'s Br. Supp. Def.'s Mot. Summ. J. at Ex. 1; Pl.'s Proposed Findings of Uncontroverted Facts at Ex. D. The Court agrees with Innotech that this declaration sets forth a legally sufficient ATCA blanket certification.

First, Innotech's certification explicitly references the ATCA and the requirements it must meet to obtain the privilege of duty-free entry. The certification states that whenever Innotech enters merchandise under the claimed duty-free ATCA classifications, that merchandise will be of a kind " 'certified for use in civil aircraft' as defined in Section 601 of P.L. 96–39" and that the merchandise will be used "in accordance with provisions set forth in" that section. The referenced section is to Title VI of the Trade Agreements Act of 1979, Section 601 of Pub.L. 96–39 (1979), which sets forth precisely the definitions and requirements found under General Note 3(c)(iv). Innotech demonstrates an understanding of its duties and obligations under the ATCA, for example, to maintain records of the use of its aircraft parts and notify Customs of any diversion from use in civil aircraft. The Court finds Innotech's certification to be an unequivocal invocation of the ATCA and of the right to the privileges thereunder.

Second, Customs' own regulations do not require more than this. 19 C.F.R. § 10.183(d)(2) states that the ATCA certification should be in "substantially the following form" and gives the example quoted above. The regulation does not require a verbatim recitation of that example. Innotech's certification clearly identifies the party requesting blanket certification, the fact that all

merchandise will be certified for use in civil aircraft, and the intention to use all merchandise under that certification in civil aircraft and to abide by all the requirements of the ATCA and General Note 3(c)(iv). Significantly, the regulation does not require more than a *statement* of this intention: "Proof of end use of the civil aircraft [parts] . . . need not be furnished." 19 C.F.R. § 10.183(c)(1) (1991). The regulation does not require the civil aircraft parts to have actual airworthiness approval at the time of entry: the parts may either be approved by the FAA or by an acceptable authority in the country of exportation[3] at the time of entry, but the parts may also be simply submitted to and received by the FAA, awaiting approval at time of entry. General Note 3(c)(iv), HTSUS; 19 C.F.R. § 10.183(d)(2) (1991). Customs admits that its own practice is to accept entry documentation at the time of entry, and conduct a verification review, if any, after entry. Def.'s Resp. Pl.'s Mot. Summ. J. at 9. Thus, the Court finds that the intent of General Note 3(c)(iv) and implementing regulation is not to verify at the time of entry whether the parts are in fact certified for use in civil aircraft. If that were the only question, then Innotech would prevail without argument; there is no dispute in this case that, as Innotech states in its certification and repeats in its protest without contest, the aircraft engine in this case is airworthy and has been verified as such. The Court finds that the regulation requires the importer to attest to the fact that its merchandise is certified for use in civil aircraft, and that Innotech's certification satisfies this requirement.

Third, if Innotech's explicit reference to Section 601 of P.L. 96–39 was insufficient to demonstrate that any merchandise entered under its blanket certification would be certified for use in civil aircraft, then Customs should have made further inquiry of Innotech. "Customs Import Specialists, who verify the importer's asserted [ATCA] classifications in the entry processing stage, are in the best position to determine whether additional evidence to support a[n ATCA] certification

**3.** Innotech's airworthiness authority is the Department of Transport of Canada, an acceptable substitute for the FAA pursuant to the United States—Canada Bilateral Airworthiness Agreements and Arrangements, T.I.A.S. No. 11023, 1984 WL 161855 (1984).

should be requested from an importer." HQ 952029 (Jan. 1, 1995). The Court agrees with Innotech that Customs is compelled by its own regulations to review all entry documentation for accuracy and compliance and must identify any errors and return entry documents to an importer for correction. 19 C.F.R. § 141.64 (1991); *see also Aviall,* 18 CIT at 735, 861 F.Supp. at 107. Thus Customs, if uncertain as to whether Innotech actually had FAA or Canadian airworthiness approval even though actual approval is not required by General Note 3(c)(iv) or Customs Regulation 10.183, should have contacted Innotech with that inquiry. As the Court has found, Innotech's certification was clearly in Customs' possession well in advance— two months— of the entry of the aircraft engine, presenting Customs with more than ample time to determine its unnecessary merit.

The Court finds Innotech's ATCA certification was timely presented and is in substantially the form required by Customs' regulations. The certification properly attests that all merchandise to be entered under the blanket certification is certified for use in civil aircraft in accordance with the ATCA and General Note 3(c)(iv) and is legally sufficient. The Court concludes that Innotech's protest should have been granted, and Customs shall re-liquidate the aircraft engine in this case under the duty-free "C" classification.

### *Conclusion*

For the foregoing reasons, defendant's motion for summary judgment is denied and plaintiff's motion for summary judgment is granted.

### JUDGMENT

Upon consideration of defendant's motion for summary judgment, plaintiff's response and motion for summary judgment, and all other papers and proceedings herein, it is

**ORDERED** that defendant's motion for summary judgment be and hereby is denied, and it is further

**ORDERED** that plaintiff's motion for summary judgment be and hereby is granted, and it is further

**ORDERED** that the Customs Service shall immediately re-liquidate the subject entry as duty-free under the Agreement on Trade in Civil Aircraft and General Note 3(c)(iv), HTSUS (1991) and refund all applicable duties and interest thereon from the date of payment.