**AVIALL OF TEXAS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Court No. 92–12–00840.
Slip Op. 94–125.

United States Court of International Trade.

Aug. 5, 1994.

Law Offices of Michael P. Maxwell, Michael P. Maxwell, Los Angeles, CA, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, Attorney in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Saul Davis, Washington, DC, for defendant.

Grunfeld, Desiderio, Lebowitz & Silverman, Jonathan M. Fee, David M. Murphy, New York City, for amicus curiae, Gulfstream Aerospace Corp.

## OPINION

MUSGRAVE, Judge.

Plaintiff initiated this action to challenge Customs' refusal to reliquidate thirty entries of parts of jet engines and other parts of civil aircraft. Plaintiff moves for summary judgment pursuant to Rule 56 of the Rules of the United States Court of International Trade. Defendant cross-moves for summary judgment. The Court has jurisdiction under 28 U.S.C. § 1581(a) and, for the reasons which follow, enters judgment for plaintiff.

### Background

Aviall of Texas, Inc. ("Aviall") is in the business of repairing aircraft engines and engine parts; and selling or leasing engines. Aviall also sells new aircraft parts. Aviall's business is limited to dealing in aircraft engine parts, and related aircraft parts used in civil aircraft. These parts have been entered *free of duty* pursuant to the Agreement on Trade in Civil Aircraft ("ATCA") which is set forth in General Note 3, HTSUS, and implemented by 19 C.F.R. § 10.183.[1]

Since 1981 Aviall has imported engines and engine parts which were intended for use and were actually used as parts of civil aircraft in the subject entries. Aviall's broker filed a blanket certification on November 7, 1989 with the U.S. Customs Service ("Customs") District Director in Dallas as required for duty free treatment under the regulation implementing the ATCA. *See* Defendant's Exhibit A, letter of September 24, 1992 (from Radix Group International, Inc.). This blanket certification is authorized by 19 C.F.R. § 10.183(c)(2) and is valid for one year pursuant to the terms of that regulation. Aviall

---

1. See page 104 of this opinion for the relevant language of 19 C.F.R. § 10.183.

alleges that through inadvertence its broker forgot to renew the blanket certification,[2] though importations of civil aircraft parts continued. At the time of entry, Aviall submitted entry summaries which claimed duty-free treatment setting forth HTSUS headings preceded by the designation "C" as required in General Note 3(c)(iv), HTSUS.[3] Several months later, Customs found that the blanket certification had expired. The import specialist liquidated the subject entries for an advance of duty, and denied duty free treatment because the blanket certification of use as civil aircraft parts on file had not been timely renewed.

Aviall filed timely protests regarding the subject liquidations pursuant to 19 U.S.C. § 1514. Aviall supported its protests with entry-by-entry certifications to cover all the subject merchandise, in addition to promptly filing an annual blanket certification. These protests noted that the blanket certification was not renewed due to clerical error. See 19 U.S.C. § 1520(c)(1).[4] The import specialist denied the protests based on the perceived failure by Aviall to provide proper evidence of any real clerical error.[5]

Aviall raises two principal claims against Customs' treatment of its merchandise. First, Aviall argues that it complied with 19 C.F.R. § 10.183 by filing a written, approved blanket certification as required by the regulation. The fact that this blanket certifica-

tion expired does not result in a "missing document," but merely results in the blanket certification on record being defective. Moreover, Aviall argues that this defect is curable by the terms of 19 U.S.C. §§ 1514, 1520(c)(1), and 19 C.F.R. § 10.112.[6]

Second, Aviall argues that the regulation, as interpreted, denies the statutory right of protest and the regulatory right to submit documents under 19 C.F.R. 10.112, and as such is invalid because it was not only duly promulgated pursuant to the Federal Register Act. See 5 U.S.C. § 553(b)(3). Amicus curiae Gulfstream Aerospace Corporation supports Aviall's position regarding Customs' refusal to reliquidate the entries. Amicus curiae argues that 19 C.F.R. § 10.183 is invalid in part, and that late filing is permitted under 19 C.F.R. § 10.112 and 19 U.S.C. § 1514.

Customs responds that the protests were properly denied due to Aviall's failure to provide proper evidence of clerical error. Customs asserts that the failure to renew the blanket certification was due to "negligent inaction" which could not be cured by the submission of entry-by-entry certifications dated after the time of entry. Customs further argues that the regulations found at 19 C.F.R. § 10.183 were a valid interpretation of congressional intent and that the regulations were duly promulgated.

2. The broker for Aviall "forgot" to renew the blanket certification until it was notified by Customs on December 10, 1990 by a "Notice of Action" stating that the blanket certification had expired. A new blanket certification was filed and approved the same day. See Defendant's Exhibit A, letter of September 24, 1992, from Radix Group International, Inc. (Aviall's broker).

3. See page 104 of this opinion for the relevant language of General Note 3(c)(iv), HTSUS.

4. See page 106 of this opinion for the relevant language of 19 U.S.C. § 1520(c)(1).

5. In asserting that the subject merchandise has been wrongly classified due to clerical error, it is incumbent on the plaintiff to show by sufficient evidence the nature of the clerical error. The Court determines that, similarly to alleged mistakes of fact, the burden and duty is upon the plaintiff to inform the appropriate Customs official of the alleged mistake with "sufficient particularity to allow remedial action." PPG Industries, Inc. v. United States, 4 CIT 143, 147–148,

1982 WL 2262 (1982), citing Hambro Automotive Corp. v. United States, 81 Cust.Ct. 29, 31, 458 F.Supp. 1220, 1222 (1978) aff'd, 66 CCPA 113, C.A.D. 1231, 603 F.2d 850 (1979).

6. 19 C.F.R. § 10.112 reads as follows:

**LATE FILING OF FREE ENTRY AND REDUCED DUTY DOCUMENTS**

**§ 10.112 Filing free entry documents or reduced duty documents after entry.**

Whenever a free entry or a reduced duty document, form, or statement required to be filed in connection with the entry is not filed at the time of the entry or within the period for which a bond was filed for its production, but failure to file it was not due to willful negligence or fraudulent intent, such document, form, or statement may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before liquidation becomes final. See § 113.43(c) of this chapter for satisfaction of the bond and cancellation of the bond charge.

## Discussion

This case is before the Court on cross-motions for summary judgment. Under the rules of this Court, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). The Court will deny summary judgment if the parties present "a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." *Ugg Int'l, Inc. v. United States*, 17 CIT ——, ——, 813 F.Supp. 848, 852 (1993) (quotation and citation omitted). "In assessing the parties' claims, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing summary judgment." *Id.*

This case does not present any genuine issue of material fact, certainly none of the facts are disputed, nor are there any claimed facts which would be enlarged upon or further explained by trial and cross-examination. The dispositive issues to be resolved are legal in nature. Because these issues are legal in nature, the Court concludes the parties' conflict raises questions of law which the Court may properly resolve by summary judgment.

■ The Court begins its review by examining the underlying legality of 19 C.F.R. § 10.183. The Federal Register Act requires that substantive rules be published in the Federal Register no less than 30 days prior to their effective date. Section 4(b)(3) of the APA, 5 U.S.C. § 553(b)(3), provides in relevant part:

> General notice of proposed rulemaking shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
>
> \* \* \* \* \* \*
>
> (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

There appears to be no dispute over the applicability of the notice-and-comment requirement to the contested regulation. Rather, the dispute centers on whether the notice set forth in the notices of proposed rulemaking was adequate.

It is elementary that a final rule need not be identical to the original proposed rule. "The whole rationale of notice and comment rests on the expectation that the final rules will be somewhat different—and improved—from the rules originally proposed by the agency." *Trans–Pacific Freight Conference v. Federal Maritime Commission*, 650 F.2d 1235, 1249 (D.C.Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2315, 68 L.Ed.2d 840 (1981). However, "[w]here the change between the proposed and final rule is important, the question for the court is whether the final rule is a 'logical outgrowth' of the rulemaking proceeding." *United Steelworkers v. Marshall*, 647 F.2d 1189, 1221 (D.C.Cir.1980), *cert. denied sub nom. Lead Industries Ass'n, Inc. v. Donovan*, 453 U.S. 913, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981). "[I]f the final rule deviates too sharply from the proposal, affected parties will be deprived of notice and an opportunity to respond to the proposal." *Small Refiner Lead Phase–Down Task Force v. United States Environmental Protection Agency*, 705 F.2d 506, 547 (D.C.Cir.1983).

A determination of whether notice was adequate in this case turns, then, on an examination of the notice which the Secretary provided in relation to the final rule which was ultimately adopted. The ATCA was enacted into law by Section 601 of P.L. 96–39. As set forth in the HTSUS (19 U.S.C. § 1202), the Agreement provides:

> (iv) *Articles Eligible for Duty–Free Treatment Pursuant to the Agreement on Trade in Civil Aircraft.*
>
> Whenever a product is entered under a provision for which the rate of duty "Free (C)" appears in the "Special" subcolumn, the importer shall file a written statement, accompanied by such supporting documentation as the Secretary of the Treasury may require, with the appropriate customs officer stating that the imported article has been imported for use in civil aircraft, that

it will be so used and that the article has been approved for such use by the Administrator of the Federal Aviation Authority (FAA) or by the airworthiness authority in the country of exportation, if such approval is recognized by the FAA as an acceptable substitute for FAA certification, or that an application for approval for such use had been submitted to, and accepted by, the Administrator of the FAA. For purposes of the tariff schedule, the term "civil aircraft" means all aircraft other than aircraft purchased for use by the Department of Defense or the United States Coast Guard.

General Note 3(c)(iv), HTSUS.

Following enactment of P.L. 96–39, Customs promulgated regulations to implement the Act. On August 8, 1980, Customs published its Notice of Proposed Rulemaking ("NPRM") in the Federal Register for notice and comment. The NPRM provided:

(c) *Documentation*

At the time of filing the entry summary, the importer shall submit a certificate in the form described in paragraph (d) of this section, together with a copy of the written order, contract, or any additional documentation Customs shall require, to verify the claim for admission free of duty. A copy of the written order or contract, or the additional documentation, need not be provided if the district director is satisfied that the documents will be available for inspection for five years from the time of entry, as provided by Part 162 of this chapter. "Time of entry" is defined in § 141.68 of this chapter. Proof of end use of the aircraft or parts need not be furnished. If the district director determines that documentation necessary to verify the claim for entry free of duty is not available at the time of filing the entry summary, the importer may enter the aircraft or aircraft parts and post a bond (see § 113.42 of this chapter) for the *missing documentation* in accordance with § 141.66 and 141.91 of this chapter.

*Proposed Rule: 19 C.F.R. Part 6 and 10 Civil Aircraft Agreement,* 45 Fed.Reg. 1633 (January 8, 1980) (emphasis added).

Over four years after issuing the NPRM, Customs promulgated implementing regula-

tions for the ATCA which are found at 19 C.F.R. § 10.183. These final rules were published and adopted effective June 7, 1984 without additional requests for comments. *See* T.D. 84–109, 49 Fed.Reg. 19,450 (May 8, 1984) *reprinted at* 18 *Cust. Bull.* 271 (1984). These regulations provide in relevant part:

(2) *Civil Aircraft Parts.*

At the time of filing the entry summary, the importer of civil aircraft parts shall submit a certificate in substantially the form described in paragraph (d)(1) of this section. As an alternative, an importer who expects to file more than one entry for civil aircraft parts during any 12 month period may submit a blanket certification in substantially the form described in paragraph (d)(2) of this section with the district director at each district where civil aircraft parts are to be entered under the provisions of General Note 3(c)(iv), HTSUS. Upon approval by the district director, the blanket certification may be renewed for additional one year periods upon written request to each concerned district director. The certification may not be treated as a missing document for which a bond may be posted. Failure to provide the certification at the time of filing the entry summary or to have an approved blanket certification on file with the district director in the district where the entry summary is filed shall result in a dutiable entry.

19 C.F.R. § 10.183(c)(2); T.D. 84–109, 18 *Cust. Bull.* at 282 (1984) (emphasis added). The underlined portion of this regulation, which is in issue in this action, was not contained in the NPRM, which indicated a blanket certification could be treated as a *missing document.*

The January 8, 1980, NPRM provided no notice of any contemplated change. The NPRM makes no mention to importers of the imposition of the annual recertification or the unique treatment of the blanket certification contrary to the language of existing Customs regulations. Indeed, the first indication to be found from the agency of any contemplated modification was in the final rule itself, as adopted June 7, 1984. The final rules added new language to the proposed rule effectively penalizing importers for the late filing of the

blanket certification. The final rule changed the obligations of the importer and resulted in a harsh sanction for failure to have a valid blanket certificate on file at the time the entry summary was filed. This type of change is exactly the change for which the APA requires prior notice and comment. The Court finds no notice, much less adequate notice, of the change to this regulation. The clear impression from the NPRM was only that the regulation would be left untouched. Under these circumstances, the modification cannot reasonably be seen as the "logical outgrowth" of a proposal that gave no indication of any change at all in this respect.

The Court therefore concludes that 19 C.F.R. § 10.183(c)(2), insofar as it adopted language which establishes a new substantive requirement penalizing importers for any failure to file the blanket certification, was adopted in violation of the procedures mandated by the notice and comment provisions of the APA and is therefore inoperative.

■ Assuming, *arguendo*, that 19 C.F.R. § 10.183 was validly promulgated, it does not eviscerate or cancel 19 C.F.R. § 10.112. It is well established that regulations must be consistent with rights conferred by statute. The courts have frequently recognized "the precept that the court must reconcile, wherever possible, seemingly inconsistent statutes or regulations." *Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund*, 763 F.2d 574, 579 (3d Cir. 1985). Moreover, "the maximum possible effect should be afforded to all statutory provisions, and whenever possible, none of these provisions be rendered null or void." *Citizens to Save Spencer County v. E.P.A.*, 600 F.2d 844, 870 (D.C.Cir.1979).

19 C.F.R. § 10.112 is *remedial* in nature. At the time this section was promulgated, Customs stated that the purpose of the regulation was "to relieve certain existing restrictions to the filing of *free* entry documents." *See* T.D. 55059, 25 Fed.Reg. 1820, *reprinted at* 95 *Treas.Decs.* 86 (1960) (emphasis added). This regulation provides for the late filing of

*duty free* entry documents or reduced duty documents *after* entry.[7] *See Hertvy Co., Inc. v. United States*, 45 Cust.Ct. 210, Abs. 64361 (1961); *Bertrand Freres Inc. v. United States*, 47 Cust.Ct. 155, C.D. 2296 (1961). The language of 19 C.F.R. § 10.112 does not limit its application to certain documents or exclude certain documents. In addition, Customs did not amend 19 C.F.R. § 10.112 when it promulgated the obligatory language of 19 C.F.R. § 10.183 nor did Customs state that 19 C.F.R. § 10.183 was an exception to the broad remedial effect of 19 C.F.R. § 10.-112. Customs promulgated 19 C.F.R. § 10.-112 to alleviate onerous filing requirements arising out of the narrow construction of duty entitlements; therefore, 19 C.F.R. § 10.112 should be liberally construed. In accordance with the purpose and express language of 19 C.F.R. § 10.112, Customs should have allowed the late filing of the blanket certification by Aviall.

Furthermore, Customs' position in this case is also contradicted by the logic underlying it's corresponding treatment under the United States–Canada Free Trade Agreement (CFTA). The statute and regulations require an importer to assert the preference by assuring the merchandise is "entered" under an applicable HTSUS provision. General Note 3(c)(vii), HTSUS; 19 C.F.R. § 10.-307(a). The proposed rules stated:

A claim for preference under the Agreement must be made *at the time of filing the entry summary* in accordance with §.10.307(a) of this part. Failure to make a timely claim will result in liquidation at the rate which otherwise would be applicable.

T.D. 89–3, 53 Fed.Reg. 51,762 (Dec. 23, 1988) *reprinted at* 23 *Cust.Bull.* 69 (1989) (emphasis added). The language mirrors that of 19 C.F.R. § 10.183 and General Note 3(c)(iv). Despite the obligatory language, Customs stated:

There was never any intent on the part of Customs to deny importers the opportunity afforded under other provisions of law to make a claim for a CFTA duty preference after the filing of the entry summary

---

7. 19 C.F.R. § 10.112 explicitly provides for the late filing of documentation absent willful negligence. *See Mattel, Inc. v. United States*, 67 CCPA 74, 624 F.2d 1076, C.A.D. 1248 (1980). Obviously, this type of conduct is not present in the course of conduct involved in this action.

or equivalent documentation, either before or after liquidation of the entry. Thus, an importer may file a claim for a CFTA preference after the filing of the entry summary or its equivalent (1) at any time prior to liquidation, by requesting correction of the entry ..., (2) within 90 days after liquidation, by filing a protest under 19 U.S.C. § 1514, or (3) at any time within one year of the date of liquidation, by a letter to Customs under 19 U.S.C. § 1520(c)(1)....

T.D. 92–8, 57 Fed.Reg. 2447 (Jan. 22, 1992) *reprinted at* 26 *Cust.Bull.* 36, 41 (1992). Customs also stated:

Nor does it seem necessary or appropriate to refer specifically to the right to file an amended entry or seek remedial action under 19 U.S.C. § 1514 or 1520(c)(1) because these actions are of general applicability and thus not cited in a context as specific as the CFTA, and it is noted in this regard that no problems appear to have arisen from the longstanding absence of such references in the GSP or CBI regulations.

*Id.* The Court is impressed by *amicus curiae's* argument that due to Customs use of identical language in 19 C.F.R. § 10.307, Customs must have had the same underlying intent in 19 C.F.R. § 10.183. These same forms of relief were available when 19 C.F.R. § 10.183 was promulgated. The above cited legislative history of 19 C.F.R. § 10.307 provides useful guidance in interpreting 19 C.F.R. § 10.183. The Court determines, therefore, that 19 C.F.R. § 10.183 does not preclude relief allowing for the late filing of the blanket certification.

■ The Court now addresses Aviall's protest of Customs' refusal to reliquidate the subject entries. Congress has specifically granted importers the right to file a protest contesting the legality of "all orders and findings ... as to ... (2) the classification and rate and amount of duties chargeable...." 19 U.S.C. § 1514.

Congress has authorized Customs to reliquidate entries to correct clerical error, mistake of fact, or inadvertence, not amounting to an error in the construction of a law. 19 U.S.C. § 1520(c)(1). In pertinent part, 19 U.S.C. § 1520(c)(1) provides that:

Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct—

(1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, *adverse to the importer and manifest from the record or established by documentary evidence,* in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the appropriate customs officer within one year after the date of liquidation or exaction....

(emphasis added).

One of the purposes of 19 U.S.C. § 1520(c)(1) is to eliminate "certain unnecessary annoyances and inequities which plague both government and private parties engaged in the import-export business." *C.J. Tower & Sons of Buffalo, Inc. v. United States,* 68 Cust.Ct. 17, 22, C.D. 4327, 336 F.Supp. 1395, 1398 (1972), *aff'd* 61 CCPA 90, C.A.D. 1129, 499 F.2d 1277 (1974) (*"C.J. Tower"*). In *Occidental Oil & Gas Co. v. United States,* 13 CIT 244, 1989 WL 30441 (1989), the court stated that "[s]ection 520(c)(1), of the Tariff Act of 1930, as amended, 19 U.S.C. § 1520(c)(1) (1982), permits reliquidation of an entry to correct a clerical error, mistake of fact, or inadvertence, if the claim is timely made." Further, in *C.J. Tower,* the Court held explicitly that "the one year provision [in 19 U.S.C. § 1520(c)] applies only to bringing the mistake to the attention of the customs service." *C.J. Tower,* 336 F.Supp. at 1400. Thus, for twenty-two years the Court has recognized and affirmed the right of importers to bring mistakes to the attention of the Customs Service under 19 U.S.C. § 1520(c).

For the purposes of 19 U.S.C. § 1520(c)(1), a mistake of fact has been defined as "a mistake which takes place when some fact which indeed exists is unknown, or a fact which is thought to exist, in reality does not exist." *C.J. Tower,* at 1399. Inadvertence has been defined as "a word of broad mean-

ing. . . . It has been defined variously as an oversight or involuntary accident, or the result of inattention or carelessness, and even as a type of mistake." *Id.* The courts have consistently held that 19 U.S.C. § 1520(c)(1) may only be used to correct mistakes of fact or inadvertence and may not be used to rectify allegedly incorrect interpretations of the law. *See Computime, Inc. v. United States,* 9 CIT 553, 555, 622 F.Supp. 1083, 1085 (1985), *Hambro Automotive Corp. v. United States,* 66 CCPA 113, 120, C.A.D. 1231, 603 F.2d 850, 855 (1979).

In the statement of material facts, the admissions of Aviall's broker disclose that the failure to file a new yearly blanket certification was due to the fact that the broker "forgot" to renew the blanket certification for the period encompassing these entries. The situation of Aviall and its broker, therefore, falls precisely within the language of *C.J. Tower:* "[A] fact which is thought to exist [existence of a valid annual certification], in reality [did] not exist." The facts state that Aviall has regularly renewed its blanket certification with the district director in the past. Moreover, an accurate if not outdated blanket certification was on file with Customs at the time of the importations. Such oversight by Aviall, both in kind and degree, surely comes within the meaning of inadvertence as defined in the statutory language and *C.J. Tower.*

Customs, in this case, has snared Aviall in a classic "gotcha." Aviall has imported parts of civil aircraft under the ATCA on a regular basis for years. Albeit the blanket certification had expired for approximately 33 days before being renewed, at all other times there was accurate and timely certification documentation on file at the Customs Service. As evidenced by the circumstances of this case, Aviall was at all times prepared to present the proper authenticating documentation for certification immediately to the Customs Service. Customs had notice of the inadvertence because the entry summaries filed each bore the designation "C," which is recognized as a claim for duty-free treatment under the ATCA. Furthermore, Customs erred in accepting the subject entries. According to Customs own regulations,[8] Customs is required to *review the entry file before acceptance* to ensure that all entry and statistical requirements are complied with and that the indicated values and rates of duty appear to be correct. 19 C.F.R. § 141.-64. Thus, assuming Customs argument is correct and the blanket certification is to be submitted at entry, Customs should have rejected the entries. Rather than providing Aviall the opportunity to cure the lapse in its blanket certification at the time of entry, Customs accepted the subject entries designated as duty-free but then presented Aviall with the bill for an advance.

The government has no cognizable interest in retaining duties which were improperly collected as a result of clerical error, mistake of fact, or inadvertence. Furthermore, collection of these types of duties on parts of civil aircraft would frustrate the purpose behind the ATCA, which is to provide duty free treatment for these types of entries.

### Conclusion

After considering all of the parties' contentions, the Court holds that: (1) the relevant provisions of 19 C.F.R. § 10.183 at issue were never published for notice and comment and are invalid; and (2) the denial of Aviall's protest based on 19 U.S.C. § 1520(c)(1) was improper, because Aviall's failure to renew the pre-existing accurate blanket certification was mere inadvertence. Summary judgment is entered for plaintiff.

### JUDGMENT

This case having been duly submitted for decision, and the Court after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

---

8. **§ 141.64 Review and correction of entry and entry summary documentation.**

Entry and entry summary documentation shall be reviewed before acceptance to ensure that all entry and statistical requirements are complied with and that the indicated values and rates of duty appear to be correct. If any errors are found, the entry and entry summary documentation shall not be considered to have been filed in proper form and *shall be returned to the importer for correction.*

**ORDERED** that plaintiff's motion for summary judgment is granted; and it is further

**ORDERED** that defendant's cross-motion for summary judgment is denied; and it is further

**ORDERED** the United States Customs Service shall reliquidate the subject merchandise free of duty pursuant to the Agreement on Trade in Civil Aircraft, and shall refund all excess duties with interest as provided by law within 60 days from the date of this Order.