**Slip Op. 04-116**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HON. RICHARD W. GOLDBERG, SENIOR JUDGE**

| | |
|---|---|
| CORRPRO COMPANIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 01-00745 |

[Judgment for plaintiff.]

Dated: September 10, 2004

Simons & Wiskin (Jerry P. Wiskin and Philip Yale Simons) for plaintiff.

Peter D. Keisler, Assistant Attorney General, United States Department of Justice; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Aimee Lee); Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, of counsel, for defendant.

**OPINION**

**GOLDBERG, Senior Judge**: In this action, plaintiff Corrpro Companies, Inc. ("Corrpro") seeks preferential duty treatment for its imported sacrificial magnesium anodes ("the subject merchandise") under the North American Free Trade Agreement ("NAFTA"). Corrpro argues that the subject merchandise is classifiable under subheading MX 8543.30.00 of the Harmonized Tariff Schedule of the United States ("HTSUS") free of duty. The

Bureau of Customs and Border Protection ("Customs"), as defendant in this action, concedes that the subject merchandise is classifiable under the same subheading without NAFTA treatment with a duty rate of 2.6 percent ad valorem, as claimed in the second cause of action in Corrpro's complaint. Hence, the sole issue before the Court is whether the subject merchandise is entitled to NAFTA treatment.

The Court's prior decision in this action in Slip Op. 03-59 (June 4, 2003) was vacated by order on November 18, 2003. In the instant action again before the Court, Corrpro moves for summary judgment pursuant to USCIT R. 56. Customs moves to dismiss for lack of jurisdiction or, in the alternative, cross-moves for summary judgment.

For the reasons that follow, the Court finds the subject merchandise classifiable under HTSUS MX 8543.30.00 and grants Corrpro's motion for summary judgment on the first cause of action in its complaint.

## I. BACKGROUND

Corrpro is an importer of the subject merchandise. Customs Headquarters Ruling Letter ("HQ") 557046, dated May 17, 1993, classified the subject merchandise under subheading 8104.19.00, HTSUS. Under this subheading, the subject merchandise was ineligible for NAFTA treatment. On August 16, 1999, Corrpro began importing the subject merchandise into the United States

under HTSUS 8104.19.00, as "[m]agnesium and articles thereof, including waste and scrap: Unwrought magnesium: Other" at the rate of 6.5 percent ad valorem. Corrpro did not make a claim for NAFTA treatment at the time of entry as provided by 19 C.F.R. § 181.21(a), nor did it file a post-importation NAFTA claim within one year of the date of importation under 19 U.S.C. § 1520(d). On June 30, 2000, Customs liquidated the subject merchandise. On September 12, 2000, Corrpro timely filed protests under 19 U.S.C. § 1514(a)(2), asserting that the proper classification of the subject merchandise was under subheading HTSUS MX 8543.30.00. In the memorandum of fact and law that accompanied the protests, Corrpro claimed that its protests of classification and duty rates constituted a proper claim for NAFTA treatment. On August 13, 2001, Customs denied the § 1514 protests in full.

Corrpro filed a complaint with the Court of International Trade on September 6, 2001. Corrpro asserted that the Court had jurisdiction under 28 U.S.C. § 1581(a) because of its timely protests of classification and rate and amount of duties chargeable pursuant to 19 U.S.C. § 1514(a)(2).

On October 10, 2001, Customs retracted HQ 557046 and reclassified the subject merchandise under HTSUS 8543.30.00. Customs issued a final notice of revocation of the classification under HTSUS 8104.19.00 on December 5, 2001. In its answer to Corrpro's complaint, dated June 24, 2002, Customs agreed to

stipulate to Corrpro's second cause of action, classifying the subject merchandise under HTSUS 8543.30.00 – without NAFTA treatment.

On June 4, 2003, the Court dismissed this action in Slip Op. 03-59. Corrpro moved for relief from judgment, claiming that the failure of Customs to disclose HQ 561933 constituted "misrepresentation . . . of an adverse party" under USCIT R. 60(b)(3). On November 18, 2003, the Court granted Corrpro's motion to vacate the decision and judgment in Slip Op. 03-59 and restored this action to the Court's calendar for further proceedings.

## II. <u>STANDARD OF REVIEW</u>

Corrpro, as plaintiff, has the burden of establishing the basis upon which subject matter jurisdiction under 28 U.S.C. § 1581(a) lies in this matter. <u>See</u> <u>Juice Farms, Inc. v. United States</u>, 68 F.3d 1344, 1345 (Fed. Cir. 1995). In considering Customs' USCIT R. 12(b)(1) motion to dismiss, the Court assumes all well-pled factual allegations are true and construes all reasonable inferences in favor of the non-movant, Corrpro. <u>See</u> <u>United States v. Islip</u>, 22 CIT 852, 854, 18 F. Supp. 2d 1047, 1051 (1998) (quoting <u>Gould, Inc. v. United States</u>, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).

Upon establishing jurisdiction under § 1581(a), the Court will grant summary judgment "if the pleadings show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c). However, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment will not be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III. DISCUSSION

**A.     The Court Has Subject Matter Jurisdiction Over This Matter Pursuant to 28 U.S.C. § 1581(a).**

Corrpo claimed in its protests, filed under 19 U.S.C. § 1514(a)(2), that the subject merchandise was entitled to NAFTA preferential duty treatment. The asserted claim for NAFTA treatment under HTSUS MX 8543.30.00 was "denied in full" by Customs. Customs argues that the Court lacks subject matter jurisdiction under 28 U.S.C. § 1581(a) over Corrpro's claim for NAFTA treatment. According to Customs, a protest made under 19 U.S.C. § 1514(a) must be preceded by a decision by Customs either through a claim for NAFTA treatment at the time of entry under 19 C.F.R. 181.21(a)[1] or through a post-importation petition under 19

---

[1]  Section 181.21(a) provides that:

In connection with a claim for preferential tariff treatment for a good under NAFTA, the U.S. importer shall make a written declaration that the good qualifies for such treatment. The written declaration may be made by including on the entry summary, or equivalent documentation . . . the symbol "MX" for a good of Mexico, as a prefix to the subheading of the HTSUS under which each qualifying good is classified . . . . [T]he declaration shall be bade on a

U.S.C. § 1520(d)[2].  Since Corrpro failed to do either, Customs

argues that there was no decision regarding NAFTA eligibility to

be contested when Corrpro filed its protests.  Therefore,

according to Customs, Corrpro's protests were premature and

cannot be the basis for an action under 28 U.S.C. § 1581(a).  In

essence, Customs seeks to prevent importers from raising a NAFTA

claim for the first time by way of a protest under any and all

circumstances.

The Court finds that Corrpro could not make a claim for

NAFTA treatment at the time of entry or during the § 1520(d)

post-importation period.  The relevant statutory language,

---

complete and properly executed original Certificate of
Origin, or copy thereof, which is in the possession of the
importer and which covers the good being imported.

19 C.F.R. § 181.21(a).

[2]  Section 1520(d) provides that:

Notwithstanding the fact that a valid protest was not filed,
the Customs Service may, . . . reliquidate an entry to
refund any excess duties . . . paid on a good qualifying
under the rules of origin . . . for which no claim for
preferential tariff treatment was made at the time of
importation if the importer, within 1 year after the date of
importation, files . . . a claim that includes –
(1) a written declaration that the good qualified under
those rules at the time of importation;
(2) copies of all applicable NAFTA Certificates of Origin .
. .; and
(3) such other documentation relating to the importation of
the goods as the Customs Service may require.

19 U.S.C. § 1520(d).

legislative history, and case law do not indicate that an importer in such a position is precluded from seeking relief via the § 1514 protest mechanism.  Accordingly, the Court finds that under the circumstances in this case, that Corrpro properly sought NAFTA treatment in its protests challenging the "classification and the rate and amount of duties chargeable." Customs' denial in full of these protests constituted appealable decisions on Corrpro's NAFTA claims to establish jurisdiction pursuant to 28 U.S.C. § 1581(a).

1.   *Corrpro Could Not Have Properly Filed a NAFTA Claim at the Time of Entry nor Under 19 U.S.C. § 1520(d).*

Corrpro contends that a binding Customs classification ruling in HQ 557046 precluded it from applying for NAFTA preferential duty treatment at the time of entry.  HQ 557046 required Corrpro to enter the subject merchandise under HTSUS 8104.19.00, a subheading that precluded a NAFTA claim.  Corrpro also claims that it could not file a post-importation § 1520(d) petition because it knew the tariff shift rule was not satisfied as required by HQ 557046.  Therefore, Corrpro could not make a written declaration attesting that the subject merchandise qualified for NAFTA treatment within the statutorily-defined period.  Corrpro further notes that filing a NAFTA claim at the time of entry or within one year of importation would have exposed it to civil penalties under 19 U.S.C. § 1592 for failing

to exercise reasonable care in following a binding Customs ruling.

Customs argues that NAFTA eligibility is a separate and independent matter from the determination of classification. With respect to Corrpro's claim that it was unable to file a § 1520(d) petition, Customs counters that Corrpro should have taken a variety of steps so that it would not be subject to civil penalties under § 1592. According to Customs, Corrpro could have included a statement indicating that entry under HTSUS 8104.19.00 was made under protest and that preferential duty treatment would be sought under HTSUS MX 8543.30.00. Customs contends that Corrpro should have fully disclosed all circumstances bearing on the claim, including the ruling precluding NAFTA classification, in a § 1520(d) petition. Thus, because Corrpro could have sought NAFTA treatment in a § 1520(d) petition, its failure to do so should preclude it from appealing Customs' denials of Corrpro's protests.

The Court finds that Corrpro behaved as a reasonable importer in attempting to comply with Customs tariff classification requirements, thereby precluding filing a NAFTA claim at the time of entry or in a § 1520(d) petition. The standard for appropriate conduct in the importation context is extremely stringent, and negligence is sufficient to expose a company to liability for infractions of customs laws. See United

States v. Ven-Fuel, Inc., 758 F.2d 741, 759 (Fed. Cir. 1985) ("The Court has long stressed the remedial purposes of the customs laws and the necessity for expansive, common sense construction so as to effectively promote the public weal . . . . [T]he compelling public interest in assuring strict compliance with legislation . . . constitutes, in and of itself, good reason to hold the citizenry to a comparatively rigorous standard of compliance."). Importers are expected to exercise care to avoid reasonably foreseeable misconduct, and failure to act accordingly satisfies the intent requirement with regard to violations. Id. at 747; see also United States v. Modes, Inc., 17 CIT 627, 632-33, 826 F. Supp. 504, 510 (1993) (holding that plaintiff "knew that submission of false invoices was illegal in the sense that he was required by law to file accurate invoices with Customs, and that he intentionally violated the law"). Failure to follow a binding Customs ruling constitutes a de facto violation of the reasonable care standard. See H.R. Rep. 103-361, pt. 1, at 2670 ("The failure to follow a binding ruling is a lack of reasonable care.").

Although HQ 557046 was subsequently revoked by Customs, the ruling was binding on Corrpro at the time of entry and within the one year from importation permitted by § 1520(d). In order to comply with the standard of reasonable care, Corrpro was required to classify the imported products under HTSUS 8104.19.00.

Failure to comply with the Customs ruling and classify the products under MX 8543.30.00 would have been an intentional violation of the law. Application for preferential duty treatment under NAFTA for products classified under HTSUS 8104.19.00 was equally impermissible and would have entailed the submission of information of questionable veracity. Therefore, in order to comply with the standard of reasonable care, Corrpro believed that it could neither claim the products under MX 8104.19.00 nor pursue preferential duty treatment for the products under HTSUS 8104.19.00. Moreover, given the comparatively rigorous standard of compliance required by courts in the importation context, Corrpro properly acted in a way to ensure that the subject merchandise was classified in accordance with HQ 557046 by not invoking NAFTA post-importation procedures.

Customs' argument that Corrpro should have submitted a "conditional" § 1520(d) petition "under protest" is erroneous. Corrpro acted with reasonable care and in accordance with law under the circumstances. The Court cannot find a sufficiently cognizable basis for requiring an importer to avail itself to NAFTA preferential duty treatment in light of a binding Customs ruling that precludes the requisite classification.

2. ***A NAFTA Claim May Be Raised for the First Time in a Protest when a § 1520(d) NAFTA Petition Cannot Be Filed Due to a Binding Customs Ruling.***

Customs argues that a decision by Customs on NAFTA treatment did not precede Corrpro's protests challenging the initial "classification and the rate and amount of duties chargeable." Because NAFTA eligibility was only raised in the protests, there was no NAFTA decision that could be challenged, rendering Corrpro's NAFTA claim premature.

Corrpro refutes this position, in part relying on HQ 561933, dated September 17, 2002.  At issue in HQ 561933 was a protest against the rate of duty and application for review of Customs' denial of NAFTA preferential treatment at the time of entry.  Corrpro quotes the following language in the ruling letter:

> Protesting Denial of NAFTA Claim
> ***
> Decisions relating to the classification and rate and amount of duties chargeable for merchandise may be protested by an importer.  In the instant case, as the decision to deny a NAFTA claim for preferential tariff treatment relates to the rate and amount of duties chargeable for the merchandise covered by the claim, it is a decision of the Customs Service that may be properly protested. . . .

Brief in Support of Plaintiff's Motion for Summary Judgment ("Pl.'s Br.") at 10 (quoting HQ 561933 at 7).  The plain language of this excerpt appears to support Corrpro's contention that a Customs decision denying a claim for preferential duty treatment under NAFTA is protestable.  As Customs points out (and Corrpro concedes), however, the importer in HQ 561933 claimed NAFTA treatment at the time of entry, which was explicitly denied by

Customs. This would seem to indicate that a decision on NAFTA treatment must be made by Customs before it can be properly raised in a protest. Notably, however, HQ 561933 does not explicitly limit claims for NAFTA treatment in such a manner. On balance, the Court finds HQ 561933 itself non-dispositive but nonetheless a credible basis for finding that a § 1520(d) petition is not the exclusive means for seeking NAFTA treatment subsequent to the time of entry.

Customs cites Power-One Inc. v. United States, 23 CIT 959, 83 F. Supp. 2d 1300 (1999) to support its assertion that a NAFTA claim requires a prior decision. Power-One states in pertinent part that:

> . . . had this document been a protest, it would have been premature . . . a sec. 1520(d) petition must come before a protest. Prior to denial of a sec. 1520(d) claim, Customs has made no decision which can be protested.

Id. at 964. Drawing on this language, Customs argues that the prerequisite for filing a proper protest on NAFTA eligibility is a prior decision on NAFTA eligibility. Memorandum in Support of Defendant's Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, Cross-Motion for Summary Judgment ("Def.'s Br.") at 14. Hence, because NAFTA treatment for the subject merchandise was not considered by Customs at any point prior to Corrpro's protests, it could not be granted by Customs.

Customs' reliance on Power-One is unconvincing. In Power-One, the importer argued that its § 1520(d) petition should be

treated as a protest. See Power-One, 23 CIT at 963, 83 F. Supp. 2d at 1304. Power-One states the unremarkable proposition that before a protest can be properly filed, there must be a decision by Customs which can be challenged. See id. at 964. In this case, Customs asserts a broader proposition: that an absolute precondition to seeking NAFTA treatment in a protest is the submission of a § 1520(d) petition and its denial by Customs. This is erroneous. Section 1520 does not control over § 1514 but rather permits limited relief as specifically provided for in its provisions. See Phillips Petroleum Co. v. United States, 54 CCPA 7, 10 (Cust. Ct. 1966) (addressing 19 U.S.C. § 1520(c)). As evidence of such, the preamble language in § 1520(c), "Notwithstanding the fact that a valid protest was not filed," is identical to that found in § 1520(d). Customs' argument that the NAFTA-specific nature of § 1520(d) precludes protests under § 1514 is unavailing. Corrpro should not be required to have filed a NAFTA claim at the time of entry or in a § 1520(d) petition as a prerequisite to its § 1514 protests because it could not have been reasonably expected to do so with HQ 557046 still in effect. Thus, contrary to Customs' argument, the key question in this case under Power-One is whether there was an initial decision that could be protested. As Corrpro correctly notes, that decision was Customs' initial classification of the subject merchandise under HTSUS 8104.19.00. See Pl.'s Br. at 19. This

initial decision does not specifically have to regard NAFTA treatment when the importer cannot raise the issue due to a binding classification ruling, as was the case here.

Corrpro filed protests under § 1514(a)(2), seeking NAFTA treatment by arguing that the subject merchandise was entitled to duty-free entry under HTSUS MX 8543.30.00. With its initial protest, Corrpro submitted a memorandum of fact and law setting forth the grounds for NAFTA eligibility, which was incorporated by reference in subsequent protests. In Customs' protest decision, the box entitled "Denied in full for the reason checked" was checked with the explanation "see attached." Attached to the protest form was a letter explaining the reasoning for denying the protest that does not mention the issue of NAFTA treatment. Customs argues that this attached letter demonstrates the independent issue of NAFTA treatment was not considered by Customs and thus was not a basis for an appealable decision under 28 U.S.C. § 1581(a). Corrpro contends that Customs' denial of Corrpro's protests constituted decisions on all claims raised in the protests, including Corrpro's NAFTA claim. If the protests were not denied in full, Customs could and should have indicated that the NAFTA claim was not protestable or indicated that the protest was denied in part. The Court finds no discernible evidence that Corrpro's NAFTA claim was not considered by Customs in the protests. Corrpro's

NAFTA claim was adequately raised in the memorandum of fact and law attached to its protests, which provided the legal grounds and documentation for satisfying NAFTA rules of origin for the subject merchandise.

Finally, according to Customs, it is illogical for Corrpro to claim that HQ 557046 prevented a NAFTA claim at the time of entry or in a § 1520(d) petition since Corrpro's protests were filed before the revocation of HQ 557046. See Defendant's Reply Memorandum to Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, Cross-Motion for Summary Judgment ("Def.'s Reply Br.") at 4. Customs argues that the same documents that were needed to file a NAFTA claim at the time of entry or in a § 1520(d) petition were also needed for its NAFTA claim in the protests. This argument, otherwise compelling under the facts here, does not dictate rejecting Corrpro's claim before the Court. Since Corrpro was protesting Customs' initial classification of the subject merchandise under § 1514(a)(2), it was not required to submit NAFTA-related documentation as set forth in § 1520(d). See Power-One, 23 CIT at 963, 83 F. Supp. 2d at 1305 ("Had Customs truly considered the § 1520(d) claims to be § 1514 protests, it would not have reviewed the documents on the merits of the NAFTA eligibility.") (emphasis added). As addressed below, Corrpro was permitted to file Certificates of Origin in

association with its § 1514 protests "at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final." 19 C.F.R. § 10.112.

Corrpro, in compliance with a standard of reasonable care, could not file a NAFTA claim at the time of entry or in a § 1520(d) petition because of HQ 557046. Instead, Corrpro filed timely and proper protests challenging Customs' "classification and the rate and amount of duties chargeable," as set forth in 19 U.S.C. § 1514(a)(2), which Customs denied in full. Accordingly, because Corrpro is appealing the denial of a protestable decision by Customs, the Court has jurisdiction over this matter pursuant to 19 U.S.C. § 1581(a).

**B.   Corrpro Properly Complied With the Procedural Requirements for Submitting NAFTA Certificates of Origin.**

Corrpro contends that NAFTA Certificates of Origin were timely submitted. Pl.'s Br. at 20. Citing 19 C.F.R. § 10.112, Corrpro claims that it satisfied Customs' requirements by submitting NAFTA Certificates of Origin for 1999, 2000, and 2001 once its products were reclassified under HTSUS MX 8543.30.00 on February 4, 2002. Id. at 20-21. As addressed above, Corrpro argues that it could not apply for preferential treatment prior to Customs' reclassification of the subject merchandise and still adhere to the standard of reasonable care for an importer. Corrpro therefore requests that the Court accept its post-

importation submission of the NAFTA Certificates of Origin under 19 C.F.R. § 10.112.

Customs argues that Corrpro failed to comply with the requirements associated with a NAFTA claim. Def.'s Br. at 22-23. Customs contends that NAFTA submissions are governed by 19 U.S.C. § 1520(d) and 19 C.F.R. §§ 181.31 and 181.32 rather than 19 C.F.R. § 10.112. Id. at 23. Customs argues that 19 C.F.R. § 10.112 must yield to the specific provisions of NAFTA governed by 19 C.F.R. §§ 181.31/32. Def.'s Reply Br. at 8. 19 C.F.R. §§ 181.31 and 181.32 require that a claim be filed within one year of importation. Customs claims that Corrpro failed to satisfy these requirements by submitting its Certificates of Origin on June 27,
2002 and thereby forfeited its claims for NAFTA treatment. Id. at 23.

Customs promulgated 19 C.F.R. § 10.112 to ease the burden associated with the ministerial filings required for duty-free or reduced duty entry. See Bertrand Freres, Inc. v. United States, 47 Cust.Ct. 155, 159 (1961). It provides for the late filing of documents relating to duty-free or reduced duty entry of merchandise "at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final." 19 C.F.R. § 10.112. This regulation has been construed as remedial in nature:

The language of 19 C.F.R. § 10.112 does not limit its application to certain documents or exclude certain documents.  In addition, Customs did not amend 19 C.F.R. § 10.112 when it promulgated the obligatory language of 19 C.F.R. § 10.183 nor did Customs state that 19 C.F.R. § 10.183 was an exception to the broad remedial effect of 19 C.F.R. § 10.112.  Customs promulgated 19 C.F.R. § 10.112 to alleviate onerous filing requirements arising out of the narrow construction of duty entitlements; <u>therefore, 19 C.F.R. § 10.112 should be liberally construed</u>.

<u>Aviall of Texas Inc. v. United States</u>, 18 CIT 727, 732, 861 F. Supp. 100, 104 (1994) (emphasis added); <u>see also</u> <u>Gulfstream Aerospace Corp. v. United States</u>, 21 CIT 1083, 981 F. Supp. 654 (1997).

Following the reasoning in <u>Aviall</u>, the Court holds that 19 C.F.R. § 10.112 supercedes 19 C.F.R. §§ 181.31 and 181.32 as it does other applicable Customs regulations.  Thus, under 19 C.F.R. § 10.112, Corrpro may submit its NAFTA Certificates of Origin at any time prior to liquidation, barring willful negligence or fraudulent intent in compliance.  Corrpro's adherence to the standard of reasonable care required of an importer rather than negligence prevented it from filing Certificates of Origin before the revocation of a binding Customs ruling that classified the products under HTSUS 8104.19.00.  Corrpro acted in conformity with 19 C.F.R. § 10.112, which merely requires documents to be submitted prior to liquidation.  It does not stipulate a specific time frame within which submissions must be made.[3]  <u>See</u> <u>Bertrand</u>

---

[3]  The parties dispute whether the Certificates of Origin were filed on February 4, 2002 (as stated in the affidavit by William P. Russo attached to the certificates) or on June 27,

<u>Freres</u>, 47 Cust.Ct. at 159-60. Corrpro's submission of Certificates of Origin therefore meets the standard set forth in 19 C.F.R. § 10.112.

**C.** **The Subject Merchandise Satisfies NAFTA Rules of Origin to Qualify for Classification Under HTSUS MX 8543.30.00.**

Corrpro claims that the subject merchandise, imported magnesium anodes, satisfies NAFTA rules of origin and is therefore eligible for preferential duty treatment as a matter of law. Corrpro contends that, to the best of its knowledge, all of the materials used in the construction of the anodes were of U.S. origin and therefore NAFTA eligible under HTSUS General Notes 12(b)(i) and 12(b)(iii). Pl.'s Br. at 27. In the alternative, even if the U.S. origin of the component parts cannot be demonstrated, Corrpro argues its imported anodes nonetheless qualify for NAFTA treatment. Pl.'s Br. at 28. According to Corrpro, if the origin of a component is unknown, the part must be deemed to be of foreign origin since non-originating materials are deemed NAFTA eligible under HTSUS General Note 12(b)(ii)(A) when manufacture in a NAFTA country transforms each component into a final product with a different tariff classification. <u>Id.</u> Corrpro notes that the requisite tariff shift occurred in the production of the imported anodes. Pl.'s Br. at 28. According to Corrpro, the magnesium ingots used to create the anodes are

_____

2002 (the date indicated on the certificates themselves). In the context of the present litigation, this four-month difference is immaterial.

provided for under HTSUS 8104.11.01, the galvanized steel straps used to produce the anodes are provided for under HTSUS 7326.90.85, and all of the alloying chemicals used in the manufacture of the anodes are provided for under HTSUS Chapter 28[4]. The final product created from these components was classified as HTSUS 8543.30.00, a tariff classification that is distinct and separate from those of each of the component parts. Pl.'s Br. at 28. The transformation occurred in a Mexican manufacturing plant. Affidavit of William P. Russo ("Russo Aff.") at 8. Therefore, Corrpro contends that the requisite tariff shift occurred and that its magnesium anodes should be deemed NAFTA eligible as a matter of law.

Customs counters that the evidence submitted by Corrpro is insufficient to substantiate a claim of NAFTA eligibility for the imported anodes. Customs underscores Corrpro's uncertainty as to the origin of the components used in anode production. Def.'s Br. at 25. In addition, Customs contends that Corrpro's description of the manufacturing process in Mexico is insufficient to determine whether the requisite tariff shift occurred. Id. Moreover, Customs argues that Corrpro has not established how the raw materials would have been classified upon importation into Mexico. Id. at 25. According to Customs,

---

[4] Specifically: sulfur under HTSUS 2802.02.00; boric acid under HTSUS 2810.10.00; manganese chloride under HTSUS 2827.39.50; ammonium boroflouride under HTSUS 2826.11.00; and magnesium chloride under HTSUS 2827.31.00. See Pl.'s Br. at 28.

without an original classification of the component parts, Corrpro's contention that a tariff shift occurred in Mexico is unsubstantiable. Def.'s Reply Br. at 8-9. Consequently, Customs requests the opportunity to further investigate the veracity and comprehensiveness of Corrpro's claim and supporting documentation. Id. at 8-9. Customs notes that it was never afforded the opportunity to evaluate the merits of Corrpro's NAFTA claim. Id. at 9.

Corrpro's claim that the imported magnesium anodes at issue are eligible for NAFTA treatment based on the U.S. origin of their component parts is without merit. As Customs correctly observes, the Russo affidavit is unreliable as to the origin of the component products. See Russo Aff. at 6 ("I was directly involved in the purchase of these chemicals and, to the best of my knowledge, all of these materials are of U.S. origin."). With regard to both a NAFTA eligibility claim and a motion for summary judgment, the burden of proof in establishing the essential elements of the case lies with the movant. Allied International v. United States, 16 CIT 545, 795 F. Supp. 449 (1992). The mere assertion of a suspicion regarding the U.S. origin of component materials by a company official is insufficient to satisfy Corrpro's burden of proof with regard to its NAFTA claims under HTSUS General Notes 12(b)(i) and 12(b)(iii).

That said, Corrpro's imported magnesium anodes are eligible for NAFTA preferential treatment under HTSUS General Note 12(b)(ii)(A). Specifically, subdivision (b) of General Note 12, HTSUS, provides, in pertinent part:

> For the purposes of this note, goods imported into the customs territory of the United States are eligible for the tariff treatment and quantitative limitations set forth in the tariff schedule as "goods originating in the territory of a NAFTA party" only if . . .
>
> (ii) they have been transformed in the territory of Canada, Mexico, and/or the United States so that -
>
> > (A) except as provided in subdivisions (f) of this note, each of the non-originating materials used in the production of such goods undergoes a change in tariff classification described in subdivisions (r), (s) and (t) of this note or the rules set forth therein[.]

HTSUS General Note 12(b)(ii)(A). Therefore, in order to qualify as originating for NAFTA purposes, Corrpro must show that the component parts used to produce the imported magnesium ingots underwent a change in tariff classification through transformation in a NAFTA country.[5] Corrpro is correct that

---

[5] Customs contends that Corrpro's failure to detail the manufacturing process used to produce the anodes precludes a determination regarding a change in tariff classification. Def.'s Br. at 25. In so stating, Customs seems to suggest that an importer is required to detail the nature and extent of the transformation undergone by non-originating materials to demonstrate a change in classification. In fact, the rules pertaining to NAFTA eligibility status explicitly require that an importer merely demonstrate that the final product would be categorized under a different HTSUS classification than each of its component parts and that this tariff shift occurred in a NAFTA-participant country. Moreover, with regard to rule of origin marking provisions, the Court has held that Customs appropriately used its discretion to supplant the "substantial transformation" standard formerly employed with a tariff shift

because the origin of the anodes' component parts is unknown, the materials must be treated as non-originating.  See HQ 956622 (Classification of Used Salmon Grill Fish Nets Cut to Material Size and Packaged for Garden Use; NAFTA Eligibility) (Oct. 31, 1994).

The question then arises as to the manner in which the materials should be classified.  Classification of goods under the HTSUS is governed by the General Rules of Interpretation ("GRIs").  GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the remaining GRIs taken in order."  Although it is unclear that Customs would have classified the materials similarly, Corrpro is correct to identify the magnesium ingots as subject to HTSUS 8104.11.01, the galvanized steel straps as subject to HTSUS 7326.90.85, and the alloying chemicals as subject to HTSUS Chapter 28, based on Customs' rulings and the explanatory chapter notes pertaining to each heading.  See NY G85211 (The Tariff Classification of Magnesium Ingots from China, Israel, Ukraine, and the Netherlands) (Dec. 29, 2000); NY F83602 (The Classification of Saddle Straps from China and Mexico) (Mar. 24, 2000); NY G80475 (The Tariff Classification of Sodium Benzoate, Zirconium Dioxide,

_____

rule based on a facial change in classification.  See Bestfoods v. United States, 165 F.3d 1371, 1373 (1999).

Boric Acid, and Electrolytic Manganese Dioxide from China, Romania, and Russia) (Aug. 11, 2000). The component parts were amalgamated in a manufacturing facility in Monterrey, Mexico to form the final magnesium anode product imported by Corrpro and initially classified by Customs under HTSUS 8104.19.00. Russo Aff. at 8-9.

Based on these findings, the Court determines that the requisite shift in tariff classification occurred to warrant NAFTA preferential treatment. Accordingly, the subject merchandise is entitled to re-classification under HTSUS MX 8543.30.00, duty-free.

## IV. <u>CONCLUSION</u>

For the aforementioned reasons, the Court holds that (1) subject matter jurisdiction exists pursuant to 28 U.S.C. § 1581(a) and (2) the subject merchandise is classifiable under HSTUS MX 8543.30.00.

Judgment for plaintiff will be entered accordingly.


/s/ Richard W. Goldberg

**Richard W. Goldberg**
**Senior Judge**

**Date:       September 10, 2004**
**            New York, New York**